# Levi Delosier et al., Plffs. in Err., v. Pennsylvania Canal Company.

The boundaries of a tract of land taken by right of eminent domain for a reservoir are, without a deed, sufficiently defined by running a line at a

NOTE.—For proof of boundaries of land taken by the state for canal purposes, see Pennsylvania Canal Co. v. Dunkel, 101 Pa. 103; Pennsylvania Canal Co. v. Harris, 101 Pa. 80; Smucker v. Pennsylvania R. Co. 188 Pa.

stated level, mapping the tract included, cutting down the timber thereon, compensating the owner for the number of acres included, and then flooding the same, to sustain ejectment for the tract by the commonwealth's grantee.

Land taken for the reservoirs of the Pennsylvania canal, under the statutes regulating its construction, although not entirely covered except during floods, was held by the commonwealth in fee, and passed in fee to the purchaser upon the sale of the canal in 1857.

(Argued May 24, 1887.   Decided October 3, 1887.)

July Term, 1886, No. 115, E. D., before Mercur, Ch. J., Gordon, Trunkey, Sterrett, Green, and Clark, JJ.   Error to the Common Pleas of Blair County to review a judgment for the plaintiff on a point reserved in an action of ejectment.   Affirmed.

The facts as they appeared at the trial in the court below before Dean, P. J., were stated in his charge to the jury which was as follows:

This is an action of ejectment brought by the Pennsylvania Canal Company against Levi Delosier and others for a tract of land in Blair township, containing about 129 acres.   In 1839 the commonwealth commenced the construction of the eastern reservoir, an improvement designed to store water for the use of the Pennsylvania canal.   The bed of the reservoir was located on the southwest branch of the Juniata river, about 1½ miles south of the main line of the canal, with which it was connected by a feeder.   The whole area of the reservoir is about 539 acres, 300 acres of which, the portion immediately at and adjoining the breast, was purchased by the commonwealth from Judge Joseph McCune.   The remaining portion immediately adjoining the McCune tract belonged, at the time of the construction of the reservoir, to Dr. Shoenberger, John L. Ingram, Patrick McCloskey and, perhaps, to other owners.   That which belonged

40, 41 Atl. 457.   When the state acquired land for canal purposes it secured a fee, which passed to its grantee, and not a mere easement.   Wyoming Coal & Transp. Co. v. Price, 81 Pa. 156; Haldeman v. Pennsylvania C. R. Co. 50 Pa. 425; Craig v. Allegheny, 53 Pa. 477.   Though no damages were ever assessed and paid, the owner not having applied to have his damages assessed within one year as required by the act of April 9, 1827.   Robinson v. West Pennsylvania R. Co. 72 Pa. 316.   See also Farnham, Waters, p. 452, as to nature of estate or interest acquired in land taken for canal purposes.

to Dr. Shoenberger, to the extent of 129 acres, is the portion in dispute.

The defendants on the evidence here have whatever title or right to the possession remained in Shoenberger, or those claiming under him, after the abandonment of the reservoir; and the plaintiff has whatever right or title the commonwealth had or acquired from Shoenberger at the time of the construction of the reservoir.

It is admitted on both sides that the reservoir was abandoned and the water drawn off in 1881 or 1882. The issue turns, it seems to us, upon a question of law which is entirely for the court. At the time of the original laying out of the reservoir, as shown by the map of Morris, chief engineer, filed in the auditor general's office in 1839, the land intended by the commonwealth to be embraced within the area of the reservoir included this land in dispute.

Thomas T. Wierman, in charge of the construction of the work, ran the line of the land intended to be embraced within the boundaries in 1846 or 1847. This line, he testifies, was run so as to include all land which might be covered by water at the height of four feet above the overflow or waste way at the breast of the dam, and included so much of Shoenberger's land as is now in dispute. This, as nearly as he remembers, was in 1846 or 1847 that he ran that line, after or about the time the work was completed. At the time of the construction of the reservoir much of the Shoenberger tract was covered with timber. This, under the direction of the commonwealth's officers, was cleared off; and although Shoenberger took the timber, it was claimed by the commonwealth; and as it formed part of the compensation to be paid to the contractors for clearing they were allowed $700 for it.

According to the testimony of Wierman, surveys and maps of the whole 539 acres were made by him, including the Shoenberger portion, and transmitted to the canal commissioners. Search has been made for these maps, but they have not been found and are not produced here. Wierman testifies to the running of the lines and the making of the maps, and he remembers distinctly of transmitting them by stage in a tin case to the commonwealth's officers at Harrisburg.

On March 6, 1847, Shoenberger made application to the canal commissioners for compensation for the damages caused

by the taking of these 129 acres; and $2,450 were awarded him in full, and that amount was paid to him. Whatever the commonwealth did, by way of taking land for the purpose of this reservoir, was done under and by authority of the legislation of 1836 and subsequent statutes for the construction of public works, or internal improvements, between the west and the east. The reservoir was not a distinct improvement, it was part of the canal just as much as any other portion not the actual boat channel was part of the canal. The legislation authorizing the construction of the canal authorized the construction of sufficient reservoirs to make the canal navigable in dry seasons. It is not material that the construction of canal and reservoir were not simultaneous. The reservoir might be constructed years after the completion of the main channel, under the authority of the general legislation authorizing the construction of the internal improvements.

Under our present impression of the law we instruct you that if the commonwealth in fact appropriated this land for the purpose of the reservoir, then it took an absolute estate in the land in perpetuity, and that estate is vested in this plaintiff.

The question, then, is: Did the commonwealth appropriate this land? It was not necessary it should have a deed. It was not necessary it should actually make permanent monuments upon the ground to show the extent of its claim. The map of Morris, the subsequent surveys of Wierman and Garrigues verifying that map of Morris, and the testimony of Wierman showing that he ran the lines and made maps himself at the time show conclusively that it was intended by the commonwealth to appropriate this land up to the line four feet above the water level at the waste weir of the reservoir. This testimony is not disputed; and we say to you that that was sufficient appropriation of the land to give title to the commonwealth, to the extent to which it could acquire title under the legislation then existing.

On the part of the defendants it is argued that an estate in perpetuity was not taken; that the commonwealth was the owner only of that portion of the land which formed the bed of the canal proper, and that the statute expressly stipulated that nothing but an easement could be acquired to any land taken for any other purpose; and as the reservoir formed no part of the bed of the canal on its abandonment the land reverted to the former owners, and therefore there can be no recovery in this case; or

that, at most, the plaintiff cannot recover for more land than was embraced within the water line from the sluice, being about eighty acres. We desire to give a further examination to this question, and we therefore reserve our answer to this point made by the counsel for the defendants.

The counsel for the defendants has also submitted the following written points:

1. The commonwealth, being the owner of the McCune tract, and having erected thereon a dam whereby the water backed on the land, did not acquire a fee in any part of said land.

*Ans.* This point is reserved.

2. If, in fact, the canal commissioners only appropriated the right to back water upon the land of Dr. Shoenberger, leaving to him the use of the land consistent therewith, the plaintiffs cannot recover.

*Ans.* The evidence shows, without dispute, that the commissioners undertook to appropriate the land. The point is denied.

3. If the commonwealth, in fact, appropriated only so much of the land of Dr. Shoenberger as is embraced by the water line from the sluice, about 80 acres, as is shown by Mr. Garrigues, the verdict cannot exceed that line."

*Ans.* This point is denied.

4. There being no description of the land in the petition or receipt and nothing thereon from which a survey could be made, the plaintiff cannot recover.

*Ans.* This point is denied.

Verdict directed for the plaintiff for the land described in the writ, subject to the opinion of the court upon the point reserved.

Afterwards the court filed the following opinion:

It is not disputed that the commonwealth did, by the construction of the breast of the dam or reservoir upon the land purchased from McCune, back the water over the land of defendants, at that time the property of Peter Shoenberger. Perhaps the mere backing of the water, without more, would have given no title to the commonwealth. But in considering this question we cannot leave out of view the other undisputed facts in the case.

These facts were clearly proven and were not disputed: The canal commissioners established as the area to be appropriated

so much land as would be covered by a water line four vertical feet above the waste weir at the western end of the reservoir. The evidence showed beyond dispute that such a water line would embrace or include the land in controversy. Two maps were put in evidence certified from the auditor general's office: one made in 1839 by Elwood Morris, and one made in 1840 showing the McCune survey. The water line proposed on each of these maps for the reservoir afterwards constructed would take in this land, but the one made in 1840 did not purport to plot the entire reservoir site. The deed from McCune to the commonwealth in 1841 specifies the water line as 4 feet in height above the water way at western end of dam. In 1846 Thomas Wierman, engineer for the state, ran the line around the entire reservoir tract and made notes of his survey; he marked the line with stakes; he ran the line on the Shoenberger tract and others; made maps of his work and transmitted them to the commissioners.

These maps are now lost, but a map of the line on Shoenberger's land was made at his, Shoenberger's, request, who made an application to the canal commissioners for damages, claiming damages per acre for 128 acres. He was awarded $2,460, and afterwards took the timber from the land, which, added to the $2,460, made about $25 per acre for the 128 acres. The number of acres in the tract now in dispute, by exact measurement, is 129 acres and 42 perches. A large portion of the land during the existence of the reservoir was constantly flooded. Sometimes it would be flooded back to the 4-foot vertical water line and cover the whole. From a survey made by Mr. Garrigues, engineer, a map of which was put in evidence showing the line run by Mr. Wierman in 1846 to correspond with the present 4-foot vertical line above the water way at western end of dam.

This evidence was not contradicted; the credibility of the witnesses was not questioned. It shows more than a mere flooding of defendants' land by backing the water; it shows a distinct, unequivocal appropriation of the land by the commonwealth for reservoir purposes; and if this appropriation was by authority of law the fee of this tract, 129 acres and 42 perches, was vested in the commonwealth, and by the sale of the main line in 1857 passed to the plaintiff.

The acts of April 11, 1825, P. L. 238; April 9, 1827, P. L. 192; March 24, 1828, P. L. 221; March 21, 1831, P. L. 181;

July 19, 1839, P. L. 631; and January 21, 1846, with the constructions put upon them in Com. *v.* M'Allister, 2 Watts, 197; Haldeman v. Pennsylvania C. R. Co. 50 Pa. 425; Pennsylvania Canal Co. v. Harris, 12 W. N. C. 432, clearly gave the canal board authority to appropriate this land for canal purposes. The mode of appropriation was sufficient to invest the commonwealth with the fee; and as a consequence of the sale of the public works in 1857 this plaintiff took the same title held by the commonwealth.

It follows, then, if this land was flooded by the commonwealth, after an authorized appropriation of it by its officers, the defendants have no title or right of possession.

This point is denied.

Judgment was accordingly entered for the plaintiff.

The assignments of error specified respectively the answers to the defendants' four points, and the action of the court in directing a verdict for the plaintiff.

*Samuel S. Blair,* for plaintiffs in error.—The title of the plaintiff below depends entirely upon the statute and the payment of damages to Dr. Shoenberger, under whom both parties claim. The defendants below contend that the commonwealth acquired but an easement in the land, and that as it has been abandoned the land is now open to their unrestricted enjoyment, they having succeeded to the title of Dr. Shoenberger.

Although the statute of 1827, in connection with that of 1826, gave a fee to the bed of the canal it was a determinable fee—to cease on the abandonment of the canal. Judge PEARSON, who well understood the general sentiment, says in Haldeman v. Pennsylvania C. R. Co. 50 Pa. 432, that he was constrained by Union Canal Co. v. Young, 1 Whart. 410, 30 Am. Dec. 212, and Com. v. M'Allister, 2 Watts, 190, to hold the title a fee simple absolute, although it did not accord with his views and was in conflict with the opinion of the legal profession through the state, and the habits and practices of the people.

And even so lately as the case of Wyoming Coal & Transp. Co. v. Price, 81 Pa. 156, the present chief justice declares that if the question were *res integra* it would be otherwise decided. The doctrine of an absolute fee in the bed of the canal is, of course, now protected by the rule of *stare decisis*.

But the act of 1827, while it changed the mode of redress for cutting the canal through the owner's land, extended the remedy to injuries "by interfering in any manner with his rights of property."

Redress for injuries by cutting the canal through the land was to be by giving up the fee upon compensation by the state. The act is silent with regard to any interest the state might acquire through compensation for any other interference with the rights of property. The inference is legitimate that the state did not intend the acquisition of a fee by any such interference. Com. v. Snyder, 2 Watts, 418; Vanhorne v. Dorrance, 2 Dall. 316, 1 L. ed. 396, Fed. Cas. No. 16,857.

There can be no doubt that all parties understood the damages to be put compensatory of an easement.

Assuming that the commonwealth would take a fee it was necessary for the plaintiff to define the land appropriated. No description of the land was made. There were no enduring memorials of what was actually taken, as there would be when the land is taken for the canal. The bed and berme bank would mark the limits. There were no marks showing the water line. The effort was to fix a line from the deed of McCune which established the line of the purchase from him by assuming a level four feet vertical above the bed of the waste way.

The fact was that it required a flood to raise the water to the level of the waste way. At the ordinary stage of water Shoenberger's land was almost clear. The adjoining owners cultivated their land. The fact that in making the purchase from McCune they bounded the land by a water-level line was not even admissible evidence of the Shoenberger line. It might have been 50 feet above the waste way on the McCune purchase, but it would not follow that the same line would apply to the owners above who were paid damages. The question of location is essentially a question of fact, and it should have been left to the jury to determine what land was actually appropriated.

*Daniel J. Neff,* for defendant in error.—The acts of assembly and all the authorities were reviewed in the case of Wyoming Coal & Transp. Co. v. Price, 81 Pa. 174, and it was held that whenever land was taken for permanent use, under the acts in question, the commonwealth acquired an estate in perpetuity.

Two kinds of occupation were plainly in view,—one perma-

nent and continual; the other temporary or of limited duration, such as might be required for the deposit of materials, or accommodation of the workmen, while the canal was in process of construction; the former of the land occupied by the canal and its necessary works, and the latter of that required to be used only during the period of construction. Haldeman v. Pennsylvania C. R. Co. 50 Pa. 425; Craig v. Allegheny, 53 Pa. 479.

The fact that all the land was not continuously flooded, or the permissive occupancy of a small portion of the land by Shoenberger, or his successors, occasionally for pasture, did not affect the title of the commonwealth. Such occasional possession or permissive occupancy was not a hostile or adverse holding, it was in subservience to the commonwealth's title. Union Canal Co. v. Young, 1 Whart. 425, 30 Am. Dec. 212; Buckholder v. Sigler, 7 Watts & S. 159; Craig v. Allegheny, 53 Pa. 477.

It was held in Robinson v. West Pennsylvania R. Co. 72 Pa. 316, that the commonwealth acquired the fee in the basin also, the portion excepted in the Robinson deed, although the basin was not defined or described, but merely occupied and no damages were assessed or paid and no release given.

There was a more exclusive dominion exercised over the reservoir than over the canal itself; for during a portion of the year there was no water in the canal, and it was not used for purposes of navigation.

Under the act of 1826 the jury were required to value the land and damages. The act of 1827 made no essential change in this respect. Under either act consequential damages could be allowed.

In Com. v. Snyder, 2 Watts, 418, there was no appropriation of complainant's land, no defining of it by a property line. It was a case of consequential damages. The ownership of land was not under consideration.

PER CURIAM:

The boundaries of the land seized for the use of the state were sufficiently defined, and that the fee thereto vested in the commonwealth is a matter now so well settled by previous decisions that discussion concerning it is unnecessary.

The judgment is affirmed.